## Ney's Estate.

*Lunacy—Feeble-minded person—United States soldier—Pension—Guardian—Biennial accounts—Triennial accounts.*

Where a Pennsylvania court is requested to file a certificate with the United States Pension Department showing that a biennial accounting by the guardian of a feeble-minded soldier has been waived by the court, it will do so only with the understanding that the waiver of the filing of the biennial account does not mean that the filing of triennial accounts provided by the Pennsylvania acts shall also be waived.

Petition of Daniel Ney, guardian of Ashton A. Ney, a feeble-minded person. C. P. Schuylkill Co., March T., 1915, No. 316.

KOCH, J., Jan. 24, 1927.—Daniel Ney was appointed guardian of Ashton A. Ney on March 1, 1915, under proceedings had by virtue of the Act of May 28, 1907, P. L. 292.

The Government of the United States pays to the guardian for the ward a pension of $36 per month, and the Commissioner of Pensions requires that Mr. Ney file an account biennially, or file a certificate with the United States Pension Department showing that such accounting has been waived by this court.

The ward is 46 years old. The guardian looks after his welfare, pays for his board, clothing and maintenance and thus consumes the $36 a month, so

Ney's Estate.

that he has nothing left to pay for filing an account. He, therefore, prays us to waive his filing of biennial accounts. We are not disposed to insist upon the guardian's compliance with the requirement of the United States Government and which the Government is willing to waive upon our expression of a like willingness.

But, while we are willing to waive the filing of biennial accounts in such cases, we do not mean to say that the guardian is relieved of his duties as defined and fixed by the statutes of this Commonwealth. The 6th section of the Act of May 28, 1907, P. L. 292, *inter alia*, says: "The guardian so appointed shall have precisely the same powers, and be subject to the same duties, as a committee in lunacy in the State of Pennsylvania. The court appointing such guardian shall have full power over the same in directing an allowance for the said ward and for the support and maintenance of his wife, or of his or her children, and the education of his or her minor children." And, as amended by the Act of April 15, 1915, P. L. 124: "Every guardian so appointed in pursuance of this act, whether required by the court to give security or not, shall, when so required by the court, or, if not required by the court, may of his own volition, once in every three years, render an account of his management of the property under his care. The accounts shall be filed in the office of the prothonotary, for the information of the court and the inspection of all parties concerned. After filing any such account, the guardian may petition the court for leave to have the account examined or audited and confirmed finally."

The Act of May 3, 1909, P. L. 391, says: "That all trustees of estates and all committees of estates of lunatics and habitual drunkards may hereafter, triennially, from the date of their appointment, file their accounts in the appropriate courts, which shall be duly audited and confirmed absolutely to that date," etc.

But, by the 63rd section of the Fiduciaries Act of June 7, 1917, P. L. 447, 534, 554, the Act of May 3, 1909, P. L. 391, is repealed "in so far as it relates to trusts subject to the jurisdiction of the Orphans' Court." The 40th section of the Act of June 13, 1836, P. L. 589, relating to lunatics and habitual drunkards, requires the committee at least once in every three years, or at any other time when required by the court, to render an account of the management of the property committed to him. Such accounts shall be filed in the office of the prothonotary for the information of the court and inspection of all parties concerned. And, in the 41st section of said Act of 1836, it is provided that every committee "shall on the determination of his trust, by the death of the party or otherwise, settle in the said office a full and complete account of his management of the property under his care, including all the items embraced in every preceding settlement." But, by virtue of the provisions of the Act of April 15, 1915, P. L. 124, which provides for the filing of triennial accounts and the audit thereof, it is unnecessary for the committee or guardian, when filing his final account, to include therein anything that was passed upon on the audit of any of his triennial accounts. From all of which it is apparent that it is the duty of such guardian to file triennial accounts, and then it is within his privilege to have such triennial account audited. We are, therefore, without authority to waive the filing of triennial accounts required by our acts of assembly. Hence, it must be understood that when we express our willingness that the filing of biennial accounts shall be waived we do not mean to say that the filing of triennial accounts is waived.

The prayer of the petitioner is granted, and the filing of biennial accounts is waived.                    From M. M. Burke, Shenandoah, Pa.